# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                       **NO. 10-102-JWD-EWD**

**PAUL W. MILLER**


## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 6, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 10-102-JWD-EWD** |
| **PAUL W. MILLER** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a motion by the defendant Paul W. Miller ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "Motion to Vacate").[1] The United States has filed an opposition,[2] and Petitioner has filed a reply.[3]

Also before the Court are Petitioner's four motions for leave to amend and supplement the Motion to Vacate (the "Motions for Leave to Amend").[4]

There is no need for oral argument or for an evidentiary hearing.  For the reasons set forth herein, the undersigned recommends that the Motion to Vacate[5] be **DENIED** and that this matter be **DISMISSED with prejudice**.  It is further recommended that the four Motions for Leave to Amend be **DENIED as untimely**.

## I.  Background

In 2008, Petitioner was living in a trailer behind the house where his mother, Linda Bledsoe, his sister, Malinda Long, and Long's daughter, C.L., lived.  On May 5, 2008, Malinda Long contacted the Denham Springs Police Department ("DSPD") to report inappropriate sexual

---

[1] R. Doc. 101.
[2] R. Doc. 110.
[3] R. Doc. 117.
[4] R. Docs. 118, 119, 120 and 121.
[5] R. Doc. 101.

contact between her brother (Petitioner) and C.L.  Long and C.L. both gave statements to the police about the Petitioner's alleged sexual battery of C.L.  Petitioner was arrested and taken into custody that day.

During this time, a woman named Tracy Daniel, who has a son (J.S.) with Petitioner, learned of Petitioner's arrest.  Ms. Daniel asked J.S. about Petitioner and J.S. told Ms. Daniel that he had seen Petitioner molest C.L. and another child victim, A.S., in Petitioner's car.  On May 6, 2008, Ms. Daniel took J.S. to the DSPD and told police that her son wanted to speak with them. In a recorded interview, J.S. told the police that he had been present when Petitioner abused C.L. and A.S.  J.S. reported that Petitioner had engaged in sexual intercourse with C.L. and A.S. in his car and that he had seen photographs depicting Petitioner's abuse of C.L. and A.S. in the car.

After interviewing J.S., DSPD Detective West spoke with Ms. Daniel, but the parties disagree about what was said.  Petitioner asserts that Det. West asked Ms. Daniel to look for evidence of the alleged sexual abuse, based upon Ms. Daniel's testimony at the trial and an affidavit from Ms. Daniel submitted in support of Petitioner's Motion to Vacate.[6]  The Government, however, asserts that Det. West asked Ms. Daniel to notify the police if any evidence of the photographs turned up.[7]  Despite the position Ms. Daniel now takes in the affidavit, the Government argues that there is no evidence that Ms. Daniel was ever directed by police to search through Petitioner's belongings.

The parties agree, however, that after her discussion with Det. West, Ms. Daniel spoke to Ms. Long about the situation and the women decided to look in Petitioner's unlocked car, which was parked in the driveway of Linda Bledsoe (Petitioner's mother).  In the passenger side door, Ms. Daniel found a case with photographs in it.  Ms. Daniel showed the photographs to Ms. Long,

---

[6] R. Doc. 117 at p. 5 (*citing* R. Doc. 101-3).
[7] R. Doc. 110 at p. 2.

who confirmed that the pictures depicted C.L. and A.S. being abused. The women then brought the photographs to Detective Albritton at the DSPD. Ms. Long identified her daughter and Petitioner in the photographs, which also included images of other nude children and people engaged in sexual activities. Although the parties disagree on where the following events occurred, both sides allege that on May 7, 2008, Ms. Long also gave Det. Albritton a computer from Petitioner's residence.[8]

Within a few days, DSPD officers applied to Judge Ward, II of the Denham Springs City Court for a search warrant to search Petitioner's computer.[9] A warrant was issued on May 14, 2008 and on May 19, 2008, DSPD officers took the computer to the Louisiana Attorney General's Office for a forensic evaluation.[10] The Attorney General's Office examined the computer and found sexual pictures of A.S. and C.L., as well as additional child pornography.

On July 7, 2010, Petitioner was charged by indictment with two counts of sexual exploitation, in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). After a trial by jury conducted on September 21 and 22, 2011, the jury found Petitioner guilty of the charged offenses.[11] On April 26, 2012 the Court sentenced Petitioner to 360 months imprisonment on the two counts of sexual exploitation and 120 months imprisonment on the count of possession of child pornography, to be served consecutively, for a total of 840 months.[12] The Court also sentenced Petitioner to 10 years of supervised release

---

[8] Petitioner asserts that Det. Albritton obtained the computer from Ms. Long at Petitioner's residence (R. Doc. 101-1 at p. 30), while the Government asserts that Ms. Long brought the computer to the DSPD (R. Doc. 110 at p. 3).
[9] R. Doc. 101-3 at pp. 10 and 12.
[10] R. Doc. 101-3 at p. 13.
[11] R. Doc. 63.
[12] R. Docs. 72 and 75 at p. 3.

for each of the three counts, to run concurrently.[13]  Petitioner was sentenced to pay an assessment of $300 and a fine of $15,000.[14]

On May 8, 2012, Petitioner filed a Notice of Appeal,[15] seeking review of his conviction and $15,000 fine.[16]  The Fifth Circuit Court of Appeals affirmed Petitioner's conviction and sentence on August 12, 2013.[17]  Upon the failure of Petitioner to thereafter file an application for a writ of certiorari in the United States Supreme Court, his conviction and sentence became final on November 10, 2013 after expiration of the 90-day period allowed for him to do so.  *See, United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000) (recognizing that a conviction becomes final under § 2255 after the 90-day period allowed for a petitioner to seek review by the United States Supreme Court if he has not pursued such relief).

On November 10, 2014, Petitioner filed the instant Motion to Vacate,[18] asserting that his trial counsel was ineffective for failing to file motions to suppress the photographs unlawfully seized from Petitioner's vehicle and the photographs unlawfully seized from Petitioner's computer, both of which were introduced as evidence at Petitioner's trial.

## II.  Law and Analysis

### A.  Post-Conviction Relief under 28 U.S.C. § 2255

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  When a petitioner has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that the

---

[13] R. Doc. 75 at p. 4.
[14] *Id*. at pp. 7-8.
[15] R. Doc. 73.
[16] *See*, R. Doc. 99 at p. 3.
[17] R. Doc. 99.
[18] R. Doc. 101.

defendant's conviction is fair and final. *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*). "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Cervantes*, 132 F.3d at 1109. However, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel. *See, Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (holding that ineffective assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).

### B.  Ineffective Assistance of Counsel

A habeas petitioner who claims ineffective assistance of counsel must affirmatively demonstrate that: (1) his counsel's performance was "deficient," *i.e,* that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) the deficient conduct prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Accordingly, in order to prevail, Petitioner must establish that his counsel's representation was deficient and that the deficient performance caused Petitioner prejudice. *Id*.  As this Court recently explained, "A court is not required to address these prongs in any particular order.  If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, 'that course should be followed.'" *United States v. Ohia*, Criminal Action No. 13-139, 2017 WL 1088081, at *4 (M.D. La. Mar. 22, 2017).

To satisfy the deficiency prong of the *Strickland* standard, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065). The reviewing court must indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the movant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *See, Bridge v. Lynaugh*, 838 F.2d 770 (5th Cir. 1988). This Court, therefore, must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

If Petitioner satisfies the first prong of the *Strickland* test, he nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Rather, Petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors 'more likely than not' altered the outcome of the case; he must instead show a probability that the errors are 'sufficient to undermine confidence in the outcome." *Id*. at 816-17.

In the instant Motion to Vacate, Petitioner attempts to assert four different grounds for ineffective assistance of counsel, all of which center around his trial counsel's failure to file motions to suppress evidence. Although not a model of clarity, the Motion to Vacate appears to

assert that Petitioner's counsel was ineffective for failing to file a motion to suppress: (1) the photographs seized by Ms. Daniel from Petitioner's vehicle; (2) Petitioner's HP computer that was seized by Ms. Long; and (3) the photographs found on Petitioner's computer, all of which were introduced as evidence at Petitioner's trial.  In the Memorandum filed in support of the Motion to Vacate, Petitioner asserts that, "had counsel moved to suppress the evidence obtained from Miller's vehicle by Tracy Daniel, the HPcomputer [sic] obtained from Malinda Long, and the contents of Miller's HPcomputer [sic] obtained from Wilson during the warrantless search and seizure, all evidence would have been excluded and the outcome of the proceedings would have been 'substantially different.'"[19]  As explained in greater detail below, Petitioner's ineffective assistance of counsel claims lack merit.

### 1.    Failure to File a Motion to Suppress Petitioner's HP Computer

Petitioner asserts that his counsel was ineffective for failing to file a motion to suppress his HP computer, which Petitioner claims was unlawfully seized by Det. Albritton in violation of his First and Fourth Amendment rights.[20]  Petitioner claims that the seizure of his computer implicates First Amendment concerns because the computer was seized "as a container of ideas, the same as a book is a container of ideas."[21]  As such, Petitioner argues that a search warrant was required for Det. Albritton to seize the computer.  Petitioner further asserts that the warrantless seizure of his computer was unconstitutional because Det. Albritton lacked probable cause to seize the computer, no exigent circumstances existed to justify the warrantless seizure, neither Petitioner nor a third-party consented to the seizure, and because the length of the warrantless seizure (22 days) was unreasonable.[22]  Petitioner asserts that while Det. Albritton obtained the computer from Ms. Long,

---

[19] R. Doc. 101-1 at p. 19.
[20] R. Doc. 101 at p. 29; *See*, R. Doc. 101 at pp. 6, 11.
[21] R. Doc. 101-1 at p. 24; *See*, R. Doc. 101-1 at p. 34.
[22] R. Doc. 101 at pp. 11, 30.

Petitioner's sister, Ms. Long had neither actual nor apparent authority as a third-party to consent to the seizure.[23]  Petitioner argues that Det. Albritton could not have reasonably concluded from the facts known to him at the time that Ms. Long had joint access or control of his computer for most purposes to consent to the seizure of the computer from Petitioner's property.[24]  The Government does not address the seizure of Petitioner's computer by Ms. Long in its opposition brief.

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence obtained was in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "It is well settled that if a private party wrongfully conducts a search or seizure of another's person or property the Fourth Amendment is not violated and that such private misconduct does not deprive the Government of the right to use evidence that it has obtained legally."  *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997) (citing *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980)).  "The Fourth Amendment proscribes only governmental action—it is 'wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'" *United States v. Pontefract*, Criminal Action No. 08-00069, 2009 WL 2351738, at *2 (W.D. La. Jul. 8, 2009) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)) (internal quotation omitted).

---

[23] R. Doc. 101-1 at pp. 34-38.
[24] R. Doc. 101-1 at pp. 37-38.

In the instant case, it is unclear from the evidence submitted in support of the Motion to Vacate how Ms. Long obtained Petitioner's computer.   In an Affidavit for Search Warrant, requesting a warrant to search the contents of the computer, Det. Albritton asserts that on May 7, 2008, Ms. Long "called the Denham Springs Police Department and advised Detective Albritton that she had a computer that Paul Miller had possession of which contained child pornography. The computer was given to Denham Springs Police Detective Albritton by Malinda Long at 224 Wesley Street on 05/07/08 at approx. 1725."[25]   In a separate report dated May 13, 2008, Det. Albritton wrote that he and Sergeant West "travelled to 224 Wesley Street, where we met with Mrs. Malinda Long in the driveway near the roadside.  Mrs. Long provided us with a HP computer, a digital camera and a SD card.  Mrs. Long informed us that she had gotten the computer from another person who had taken the computer away from the house."[26]   During the September 2011 trial, Ms. Long testified that she obtained the computer from the house of Wendy Ada Scott, the mother of one of the child victims (A.S.).[27]   Regardless of who initially seized the computer, Petitioner has made no argument that either Ms. Long or Ms. Scott, both private citizens, were acting under the color of government authority when Ms. Long obtained Petitioner's computer. As such, the Fourth Amendment is wholly inapplicable to the seizure of the computer by Ms. Long.

Because Petitioner's Fourth Amendment rights were not implicated by Ms. Long's warrantless seizure of his HP Computer, a motion to suppress the computer filed by Petitioner's trial counsel would have failed.[28]   As such, even assuming *arguendo* that counsel's performance

---

[25] R. Doc. 101-3 at p. 10

[26] R. Doc. 101-3 at p. 11.

[27] *See*, **SEALED** R. Doc. 82, p. 30, lines 17-18; p. 43, lines 22-25 through p. 44, lines 1-25.

[28] Because the Fourth Amendment is inapplicable to seizures by private citizens acting in their own interests, Petitioner's argument that the First Amendment requires heightened particularity to support the seizure also fails.

was deficient for failing to file a motion to suppress Petitioner's HP computer, the undersigned finds that Petitioner was not prejudiced by that error.  Thus, Petitioner's Sixth Amendment claim of ineffective assistance of counsel based upon his counsel's failure to file a motion to suppress his HP computer lacks merit.[29]

### 2. Failure to File a Motion to Suppress the Photographs Found on Petitioner's HP Computer

Petitioner next asserts that his trial counsel was ineffective for failing to file a motion to suppress the photographs that were seized from his HP computer pursuant to an invalid search warrant.  Specifically, Petitioner asserts that the May 14, 2008 affidavit submitted to obtain the search warrant contained stale information; failed to offer a detailed description of the evidence of alleged child pornography or the alleged criminal acts (aggravated rape and molestation of a juvenile) to be found on the computer; failed to provide the required nexus between Petitioner, the alleged crime and the computer to be searched; and failed to provide the required veracity and basis of knowledge of the informants, witnesses, or alleged victims.[30]  Petitioner argues the judicial officer had no substantial basis for finding probable cause to issue the search warrant because the affidavit contained no information regarding the time of the alleged offenses and contained only conclusory statements.[31]  Petitioner also asserts that the search warrant was facially deficient because it had expired before it was executed by Det. Brian Wilson, such that Det. Wilson conducted a warrantless seizure of the computer in violation of Petitioner's Fourth Amendment rights.[32]

---

[29] Because the undersigned finds that Ms. Long's seizure of the HP computer does not implicate Petitioner's Fourth Amendment rights, the undersigned need not reach Petitioner's assertion that the length of the warrantless seizure of the computer, from May 7, 2008 until May 29, 2008 (22 days) was unreasonable.  *See*, R. Doc. 101 at pp. 6, 11-12. R. Doc. 101-1 at pp. 38-59.
[30] R. Doc. 101 at pp. 6-7, 16-17.
[31] R. Doc. 101-1 at p. 60
[32] R. Doc. 101 at pp. 7, 8, 20; R. Doc. 101-2 at pp. 38-39.

In response, the Government asserts that the search warrant was more than sufficient in this case because the issuing judge had been advised of the following: (1) that Petitioner had been arrested for sexual battery; (2) that a woman living at the same general address had called the police and turned in a computer belonging to Petitioner, which she described as containing child pornography; (3) that three juvenile victims had provided statements in which they reported Petitioner had taken pictures of them while they were naked and while they performed sexual acts, and that Petitioner stored the pictures on his computer; (4) that family members had obtained pornographic photographs from Petitioner's car and provided them to police, which depicted the three juvenile victims who had given statements; and (5) that Petitioner had possessed additional photographs of unidentified young children suggesting child erotica.[33] The Government contends that this clearly established the probability that evidence of criminal activity would be found on the computer and was therefore, legally sufficient.[34]

A defendant who seeks to suppress evidence seized pursuant to a search warrant bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999) (*en banc*)). "A valid search warrant may be issued only upon a finding of probable cause. The information necessary to show probable cause must be contained within a written affidavit given under oath." *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity. *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (citing *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993)). According to the Fifth Circuit, in determining whether probable cause exists, a court must make "a practical,

---

[33] R. Doc. 110 at p. 11 (*citing* R. Doc. 101-3 at p. 10).
[34] R. Doc. 110 at p. 11 (citing *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004)).

common-sense decision" as to whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Froman*, 355 F.3d at 889 (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994)) (internal quotation marks omitted).

The Supreme Court has held that the probable cause standard is a "practical, nontechnical conception," which deals with "probabilities" rather than "hard certainties." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317 2328, 76 L.Ed.2d 5274 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1897 (1949) and *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).  Based upon this strong preference to be accorded searches under a warrant, the Supreme Court has held that even marginal or doubtful cases involving the determination of probable cause should be resolved by upholding the search warrant.  *United States v. Ventresca*, 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed. 2d 684 (1965) (citing *Jones v. United States*, 362 U.S. 257, 270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)); *Christian v. McKaskle*, 731 F.2d 1196, 1200 (5th Cir. 1984).

With respect to Petitioner's assertion that the information contained in the warrant affidavit is stale, the Fifth Circuit has explained that, "The amount of delay which will make information stale depends upon the particular facts of the case, including the nature of the criminal activity and the type of evidence sought." *United States v. Allen*, 625 F.3d 830, 842 (5th Cir. 2010).  As Petitioner readily acknowledges,[35] a majority of courts have concluded that a delay, even a substantial delay, between the collection or distribution of child pornography and the issuance of a search warrant does not render the underlying information stale.  *Id*. (finding information that was 18 months old when the warrant was issued not stale); *See, United States v.*

---

[35] R. Doc. 101-1 at pp. 64-65.

*Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005) (five-year-old receipt was not stale information);

*United States v. Frechette*, 583 F.3d 374 (6th Cir. 2009) (information regarding the purchase of a

one-month subscription to a child pornography site purchased 16 months prior to the search was

not stale); *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (court upheld search warrant

based on information ten months old); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119

(1st Cir. 2008) (evidence acquired three years before the warrant application was not stale in child

pornography case); *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) (information a

year old is not necessarily stale as a matter of law).

Here, the information contained in the warrant affidavit was not stale when the warrant was

issued on May 14, 2008.  Although Petitioner argues at length that the information is stale because

it contains no dates of the alleged sexual abuse,[36] it is clear from the exhibits submitted in support

of Petitioner's Motion to Vacate that the alleged acts of sexual abuse were occurring in March

2008, just two months before Det. Albritton requested the search warrant.  Specifically, one of the

child victims (C.L.) gave a statement to the DSPD on May 5, 2008, during which C.L. stated that

Petitioner was in jail in 2007, but that "a short time before he was released," Petitioner had told

C.L. "you are going to . . . make love to me when I get out."[37]  C.L. stated that Petitioner became

very sexually aggressive towards her in March 2008 and that Petitioner had been sexually abusing

C.L. "for the past few months."[38]  C.L. also mentioned an incident when Petitioner told her to take

nude photographs of herself and threatened to physically abuse her if she did not comply with his

request.[39]  Further, Petitioner's minor son, J.S., gave a statement to the DSPD on May 6, 2008,

during which J.S. told police officers that he was present "in his dad's (Paul Miller's) white Ford

---

[36] R. Doc. 101-1 at pp. 64-75; R. Doc. 101-2 at pp. 1-12.
[37] R. Doc. 101-3 at p. 8.
[38] *Id.*
[39] *Id.*

Mustang, when his dad showed pictures of [C.L.] and [A.S.] on a display screen in the car and having sex with [A.S.] in the car."[40]  Further, Petitioner's sister (Ms. Long), provided the DSPD with Petitioner's personal computer on May 7, 2008, and told officers that the computer contained child pornography belonging to Petitioner.[41]  While acknowledging that, "Three victims claimed that Miller placed photographs on a computer," Petitioner argues there is no evidence in the affidavit that the computer Ms. Long had was the same computer that the victims saw Petitioner load pictures onto.[42]

The undersigned finds the information contained in the affidavit, which pertains to events that had occurred a week before and up to a few months before the date of the affidavit, was not stale.  Additionally, the weight of cases from this Circuit have held that in child pornography cases even several years' time is not sufficient to render the underlying information stale.  To the extent Petitioner asserts that the affidavit is facially defective because it contains only conclusory allegations that evidence of a crime would be found on his computer,[43] Petitioner's arguments lack merit.  As discussed above, the warrant affidavit provided numerous facts from several different sources, including a family member and three child victims, from which a judicial officer could, and did, find probable cause.  As such, the affidavit offered sufficient information to conclude that there was a "fair probability" that evidence of child pornography, molestation of a juvenile and aggravated rape would be found on Petitioner's computer.  *See*, *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004).  Further, the Fifth Circuit has held that, "The magistrate's[44] determination that probable cause was shown by the affidavit is [] entitled to great deference."  *United States v.*

---

[40] *Id*. at p. 3.
[41] *Id*. at p. 11.
[42] R. Doc. 101-2 at p. 30.
[43] *See*, R. Doc. 101 at pp. 7, 16, 17; R. Doc. 101-2 at pp. 12-29.
[44] In this case, Judge Ward, II, of the city Court of Denham Springs, Louisiana made the probable cause determination and issued the search warrant.  The term "magistrate" used in the applicable case law is in reference to the decision maker for probable cause in a federal case; however, it is equally applicable to the present state court Judge.

*Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) (quoting *United States v. Phillips*, 727 F.2d 392, 394 (1984)).  Accordingly, the undersigned finds no error in Judge Ward's determination that the search warrant was supported by probable cause.

To the extent Petitioner asserts the search warrant was facially deficient because it was not executed prior to May 24, 2008, or ten days after its issuance,[45] Petitioner's argument is unpersuasive.  The evidence in the record shows that the search warrant was issued on May 14, 2008,[46] that Det. West delivered the computer to the Louisiana Attorney General's Office for examination on May 19, 2008,[47] and that the computer was examined by the Attorney General's Office on May 29, 2008.[48]  "The general touchstone of reasonableness which governs [the] Fourth Amendment analysis . . . governs the method of execution of the warrant."  *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 996, 140 L.Ed.2d 191 (1998).  "As many circuits have recognized, the Fourth Amendment "contain[s no] requirements about *when* the search or seizure is to occur or the *duration*."  *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (finding four-month forensic examination of computer hard drive was within typical period of delay in executing a warrant) (internal quotation marks omitted) (citations omitted) (emphasis in original).  "Courts have therefore consistently 'permitted some delay in the execution of search warrants involving computers because of the complexity of the search' and they often restrict their 'analysis of the delay in executing . . . warrants [to] consider[ing] only whether the delay rendered the warrants stale.'"  *Jarmon*, 847 F.3d at 266 (quoting *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)).

---

[45] R. Doc. 101-2 at p. 40.  At the time the warrant was issued in this case, Fed. R. Crim. P. 41(e)(2)(A) required that a warrant be executed within 10 days of issuance.  In 2009, the provision was amended to 14 days.  *See,* Fed. R. Crim. P. 41, Committee Notes on Rules—2009 Amendment.
[46] R. Doc. 101-3 at p. 12.
[47] R. Doc. 101-3 at p. 13.
[48] R. Doc. 101-3 at pp. 14-18.

The undersigned finds Petitioner's rights under the Fourth Amendment were not violated by the fifteen-day delay between the issuance of the search warrant and the examination of Petitioner's computer.  As an initial matter, the warrant was executed on May 19, 2008, a mere five days after its issuance, when the computer was turned over to the Attorney General's Office for examination.  Further, the Fifth Circuit has held that, "[E]ven if federal officers have failed to execute the warrant within a reasonable time, the evidence seized will be excluded only if the delay resulted in legal prejudice to the defendant." *United States v. Harper*, 450 F.2d 1032, 1043 (5th Cir. 1971) (citations omitted).  Here, Petitioner has not shown that he was prejudiced by the completion of the computer examination by the Attorney General's Office after the expiration of the search warrant.  Additionally, probable cause to search the computer did not dissipate during the delay in completing the examination and there is no evidence the Government acted in bad faith to cause the delay.  *See*, *Redenius v. United States*, EP-13-CV-345-DB, EP-11-CR-361-DB-1, 2015 WL 13387866, at *4 (W.D. Tex. Aug. 27, 2015) (citing *United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004)).  From the information and evidence provided, the undersigned finds that the DSPD complied with the May 14, 2008 search warrant by giving Petitioner's computer to the Attorney General's Office on May 19, 2008 for examination.  Thus, any delay in the DSPD executing the warrant was not unreasonable.

Based upon the foregoing, a motion to suppress the photographs obtained from Petitioner's HP computer would have failed.  As such, even if counsel's performance was deficient for failing to file a motion to suppress the photographs, the undersigned finds that Petitioner was not prejudiced by that error.  Thus, Petitioner's Sixth Amendment claim of ineffective assistance of counsel based upon his counsel's failure to file a motion to suppress the photographs obtained from Petitioner's HP computer lacks merit.

### 3. Failure to File a Motion to Suppress the Photographs Found in Petitioner's Vehicle

Petitioner also argues that his trial counsel was ineffective for failing to file a motion to suppress the photographs that were obtained from his vehicle by a warrantless search and seizure by Ms. Daniel, who was acting as an agent of the government.[49] Petitioner "takes it as evident that the government knew of and acquiesced in Daniel's conduct and that Daniel's only intent was purely to aid law enforcement officers."[50] Petitioner asserts that Ms. Daniel was acting as a government agent at the time she searched his car and found the photographs because Det. West had previously told Ms. Daniel that he needed evidence of Petitioner abusing the child victims and asked her to look around Petitioner's property for such evidence.[51] Petitioner submitted an affidavit from Ms. Daniel dated July 23, 2014, that states on May 6, 2008, Det. West had asked Ms. Daniel to look around Petitioner's residence for evidence of the alleged sexual abuse of C.L. and A.S.[52] Petitioner asserts that the affidavit confirms Ms. Daniel's trial testimony on the issue.

The Government disputes Petitioner's allegations, asserting that the statements contained in Ms. Daniel's July 23, 2014 affidavit contradict the statements she provided to the Federal Bureau of Investigation and the DSPD in 2010.[53] In the 2010 statement, Ms. Daniel stated that she was not directed by the DSPD to conduct a search of Petitioner's vehicle and that while Det. West had told her to notify the police if any evidence of the photographs was found, she was never directed to search the vehicle or any other location.[54] The Government, however, further asserts that Petitioner has not provided any evidence that the Government knew Ms. Daniel would search

---

[49] R. Doc. 101 at p. 6, 11; R. Doc. 101-1 at pp. 20-29.
[50] R. Doc. 101-1 at p. 25.
[51] R. Doc. 101-1 at p. 26.
[52] R. Doc. 101-3 at pp. 4-5.
[53] R. Doc. 110 at p. 16 (*citing* R. Doc. 110-1).
[54] R. Doc. 110-1 at p. 2.

the car, nor has he presented evidence to show Ms. Daniel was motivated solely by a desire to aid law enforcement, as required to prove that a private party acted as a government agent.[55]

As previously discussed with respect to Ms. Long's seizure of Petitioner's HP computer, the Fourth Amendment does not protect against searches conducted by private individuals acting in a private capacity. *United States v. Oliver*, 630 F.3d 397, 406 (5th Cir. 2011) (citing *United States v. Jacobsen*, 466 U.S. 109, 113-14, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *United States v. Runyan*, 275 F.3d 449, 457 (5th Cir. 2001)). "The question is whether, in view of the circumstances of the case, the private party acted as an instrument or agent of the Government when he conducted the search. *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971)). To make that determination, the Fifth Circuit applies a two-part test, asking: (1) whether the Government knew or acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or to further his own ends. *Blocker*, 104 F.3d at 725 (citing *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)). The movant has the burden to establish both factors in order to show the private party acted as a government agent or instrument. *United States v. Thompson*, 2016 WL 3476714, at *7 (E.D. La. June 27, 2016) (citing *Miller*, 688 F.2d at 657-58 (9th Cir. 1982); *United States v. Pierce*, 893 F.2d 669, 673-74 (5th Cir. 1990); *United States v. Jarrett*, 338 F.3d 339, 345 (4th Cir. 2003); *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003); *Unite States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987)).

Petitioner has failed to establish that Ms. Daniel's actions satisfy either prong of the *Miller* test. As an initial matter, Petitioner conclusory asserts and "takes it as evidence" that both requirements are met in this case.[56] However, conclusory allegations are not sufficient to satisfy

---

[55] R. Doc. 110 at pp. 17-18 (citing *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997)).
[56] R. Doc. 101-1 at p. 25.

Petitioner's burden of proof under *Miller*.  Instead, Petitioner must come forward with affirmative evidence that the Government participated in or encouraged Ms. Daniel's search of the vehicle and that Ms. Daniel searched the vehicle to assist law enforcement efforts rather than to further her own interests.  *See, Thompson*, 2016 WL 3476714, at *7; *Blocker*, 104 F.3d at 739.  With respect to the first factor, Petitioner has not provided any evidence to show that the Government knew that Ms. Daniel would search Petitioner's car for evidence of the alleged sexual abuse, nor has Petitioner provided evidence that the Government acquiesced therein.  In her July 23, 2014 affidavit, Ms. Daniel states that Det. West approached her and asked her to "look around [Petitioner's] place for evidence of the girls [sic] abuse."[57]  Ms. Daniel testified at trial that Det. West had asked her to return with evidence,[58] but that she had searched Petitioner's vehicle because "I figured that's the only place he'd put his things, so that's where I looked."[59]  To the contrary, the Government has submitted a June 29, 2010 statement from Ms. Daniel, which contains the following:

> Daniel was asked if anyone at the police department directed her to conduct that search of the Mustang.  Daniel stated she was not directed to do so by police.  Daniel stated Det. Chad West had told her to notify police if any evidence of the photographs were found and to turn over any evidence in their possession but she was never directed to search the Mustang or any other location.[60]

To the extent that Ms. Daniel has provided conflicting statements, her statements are not sufficient to meet Petitioner's burden of proving the Government knew of, or acquiesced in, Ms. Daniel's search of Petitioner's vehicle.

---

[57] R. Doc. 101-3 at p. 4.
[58] *See*, **SEALED** R. Doc. 82 at p. 148, lines 17-19.
[59] *Id*. at p. 150, lines 13-16.
[60] R. Doc. 110-1 at p. 2.

Further, Petitioner has failed to offer any evidence to show that Ms. Daniel searched his vehicle to assist the DSPD rather than to further her own interests, relying instead upon conclusory allegations.[61]  As the Government points out, it is unclear whether Ms. Daniel searched Petitioner's car for evidence of the alleged abuse to aid law enforcement or to protect her minor son from a man who may have sexually abused both him and Ms. Daniel's niece (C.L.).[62]  In fact, by Petitioner's own admission, Ms. Daniel's search of Petitioner's car was after Ms. Daniel's son told Det. Chad West during questioning that there were pictures in Petitioner's car.[63]  Further, Petitioner has not offered any evidence that the DSPD offered any form of compensation for Ms. Daniel to search the vehicle.  The Fifth Circuit has held that compensation is an important consideration in determining whether the private party became an agent of the government.  *Blocker*, 104 F.3d at 739 (citations omitted).  Petitioner has failed to meet his burden of proving that Ms. Daniel was acting as a government agent based on the *Miller* factors.  As such, Ms. Daniel's search of Petitioner's vehicle was a search by a private individual, which is not subject to Fourth Amendment considerations.

Because Petitioner's Fourth Amendment rights were not implicated by Ms. Daniel's warrantless search of his vehicle, a motion to suppress the photographs found during the search would have been unsuccessful.  As such, even assuming *arguendo* that trial counsel's performance was deficient for failing to file a motion to suppress the photographs found in Petitioner's vehicle, Petitioner was not prejudiced by that error.  Thus, Petitioner's Sixth Amendment claim of ineffective assistance of counsel based upon his counsel's failure to file a motion to suppress the photographs seized from Petitioner's vehicle lacks merit

---

[61] R. Doc. 101-1 at pp. 25, 27, 28.
[62] *See*, R. Doc. 110 at p. 18.
[63] R. Doc. 101-1 at p. 26.

Based upon the foregoing, Petitioner's ineffective assistance of counsel claims lack merit. As such, Petitioner's Motion to Vacate should be denied and this matter should be dismissed with prejudice.

### C.  Petitioner's Four Motions For Leave to Amend the Motion to Vacate

As previously mentioned, also pending before the Court are four Motions for Leave to Amend the Motion to Vacate, filed by Petitioner.[64]  In the first Motion for Leave to Amend, which was filed on November 23, 2015, Petitioner seeks to add the following four grounds of relief to the Motion to Vacate: (1) 28 U.S.C. § 2251(a) is jurisdictionally unconstitutional on its face and is facially invalid; (2) 28 U.S.C. § 2251(b) and (c) are jurisdictionally unconstitutional on their face and are facially invalid; (3) 28 U.S.C. §§ 2252 and 2252(a) are not speech integral to criminal conduct and are void under the First Amendment's overbreadth doctrine; and (4) 28 U.S.C. § 2251(d) is not speech integral to criminal conduct.[65]  In the second Motion for Leave to Amend, which was filed on March 14, 2016, Petitioner seeks to add an ineffective assistance of counsel claim based upon his trial counsel's failure to move for acquittal under Fed. R. Crim. P. 29.[66]  In the third Motion for Leave to Amend, which was filed on January 13, 2017, Petitioner seeks to add a claim that § 2251(a) violates the First Amendment by suppressing speech and is an unconstitutional exercise of Congress' Commerce Clause power.[67]  Petitioner's fourth Motion for Leave to Amend, which was filed on March 21, 2017, re-urges the arguments raised in the third Motion for Leave to Amend.[68]

---

[64] R. Docs. 118, 119, 120, 121.
[65] R. Doc. 118-1 at pp.1-4.
[66] R. Doc. 119 at p. 1.
[67] R. Doc. 120.
[68] R. Doc. 121.

Petitioner's four Motions for Leave to Amend are untimely.   A one year statute of limitations applies to § 2255 motions, which runs from the latest of:

(1) The date on which the judgment of conviction becomes final;
(2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) The date on which the right asserted was initially recognized by the Supreme Court, if that right has been  newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Here, the Fifth Circuit affirmed Petitioner's conviction on August 12, 2013.[69] Upon the failure of Petitioner to thereafter file an application for a writ of certiorari in the United States Supreme Court, his conviction and sentence became final on November 10, 2013 after expiration of the 90-day period allowed for him to do so.  *See, United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000).  Thus, Petitioner's Motion to Vacate, which was filed on November 10, 2014, was timely filed within the one-year statutory limitation period.

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings, and the law is clear that Rule 15 applies to amendments of § 2255 motions.  *See, United States v. Saenz,* 282 F.3d 354. 356 (5th Cir. 2002) ("Every circuit that has addressed this issue agrees the [AEDPA's] one year statute of limitations does not render Rule 15 inapplicable to federal habeas proceedings.").  "Under Fed. R. Civ. P. 15(c), a district court may in its discretion, permit an amendment which clarifies or amplifies a claim or theory in a timely filed § 2255 petition after AEDPA's one year statute of limitations has expired." *United States v. Thomas,* 221 F.3d 430, 438 (3rd Cir. 2000).  "Conversely, an amendment under Rule 15(c) should not be allowed where

---

[69] R. Doc. 99.

the movant seeks to add an entirely new claim or new theory of relief." *United States v. Sandoval*, Criminal Action No. H-95-142-20, Civil Action No. H-03-3879, 2006 WL 2927680, at *8 (S.D. Tex. Oct. 10, 2006) (citing *Thomas*, 221 F.3d at 436).

Because each of the four Motions for Leave to Amend were filed beyond the one-year statute of limitations period set forth in 28 U.S.C. § 2255(f) and each motion raises a new theory or theories of relief, Petitioner is not entitled to amend his Motion to Vacate under Fed. R. Civ. P. 15. *Sandoval*, 2006 WL 2927680, at *8.

## **RECOMMENDATION**

It is the recommendation of the Magistrate Judge that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255[70] be **DENIED** and that this case be **DISMISSED with prejudice.**

It is further recommended that Petitioner's four Motions for Leave to Amend the Motion to Vacate[71] be **DENIED as untimely**.

Signed in Baton Rouge, Louisiana, on March 6, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[70] R. Doc. 101.
[71] R. Docs. 118, 119, 120, 121.